**No. 11-15724-GG**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
                                                                *Plaintiff-Appellee,*

**v.**

**THEODORE STEWART FRIES,**
                                                                *Defendant–Appellant.*

———————

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Tallahassee Division
District Court Case No. 4:11cr22-RH

———————

**CORRECTED INITIAL BRIEF OF APPELLANT**

———————

Randolph P. Murrell
Federal Public Defender
By: Chet Kaufman
Assistant Federal Public Defender
Florida Bar No. 814253
227 N. Bronough Street, Ste. 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
Attorney for Appellant
chet_kaufman@fd.org

Cir. Ct. No. 11-15724-GG

United States v. Theodore Stewart Fries

<u>CERTIFICATE OF INTERESTED PERSONS</u>

The following are persons with an interest in the outcome of this case:

Coody, Jason R.: Assistant U.S. Attorney

Davies, Robert G.: Assistant U.S. Attorney

Fries, Theodore Stewart: Appellant

Hinkle, Robert L.: U.S. District Judge

Kaufman, Chet: Assistant Federal Public Defender

Marsh, Pamela C.: U.S. Attorney

Mickle, Stephan P.: U.S. District Judge

Murrell, Randolph P.: Federal Public Defender

Satterfield, Jessica: U.S. Probation Officer

Sherrill, Jr., William C.: Magistrate Judge

## STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel leaves oral argument to this Court's discretion.

<u>TABLE OF CONTENTS AND CITATIONS</u>

<u>Contents</u>                                                    <u>Page</u>

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    (i)    <u>Nature of the Case and Statement of Non-incarceration</u>. . . . . . . . . . 3

    (ii)    <u>Course of Proceedings and Dispositions in the Court Below</u>. . . . . . . 3

    (iii)    <u>Statement of the Facts</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *1.*    *The charge at issue defines the transferee's status with respect to a firearms license as an essential element, but the district court's instructions took that issue away from the jury.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *2.*    *The focus of discussions about the Count II jury instructions was on Fries' defense that he believed the agent/buyer could have been a resident of more than one state, and did not focus on the transferee's status* . . . . . . . . . . . . . . . 7

    *3.*    *Trial evidence regarding Count II made no mention of whether the buyer was or was not a licensed firearms dealer, importer, manufacturer, or collector* . . . . . . . . . . . . . . . . . . . 8

    (iv)    <u>Standards of Review</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . 18

I.     WHETHER THE EVIDENCE WAS INSUFFICIENT TO CONVICT WHEN NO EVIDENCE WAS PRESENTED AS TO WHETHER THE TRANSFEREE OF THE FIREARM WAS OR WAS NOT A LICENSED IMPORTER, MANUFACTURER, DEALER, AND COLLECTOR OF FIREARMS, AN ESSENTIAL ELEMENT OF 18 U.S.C. § 922(a)(5). . . . . . . . . . . . . . . . . . . . . . . 18

A.     **The error was plain without resort to any statutory construction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.     **Even if statutory construction analysis is applied, the plainness of the error remains self-evident**. . . . . . . . . . . . . . . . . 23

       1.     *Congress explicitly created exceptions <u>after</u> using parentheticals to define the crime*. . . . . . . . . . . . . . . . . . . . . 24

       2.     *Legislative history likewise indicates that the transferee's status was necessary to the definition of the crime*. . . . . . . . 27

       3.     *The Government was well-situated to adduce evidence demonstrating the transferee's status*. . . . . . . . . . . . . . . . . . . 32

C.     **The Governments failure to prove an essential element necessarily affected Fries' substantial rights and warrants correction because it seriously affected the fairness, integrity, or public reputation of these judicial proceedings**. . . . 33

II.    WHETHER THE DISTRICT COURT UNCONSTITUTIONALLY RELIEVED THE GOVERNMENT OF ITS BURDEN TO PROVE EVERY ELEMENT BEYOND A REASONABLE DOUBT BY INSTRUCTING THE JURY THAT THE SALE OF A FIREARM TO A LICENSED DEALER WAS AN IRRELEVANT EXCEPTION TO THE PROHIBITION ON SALES TO NON-RESIDENTS RATHER THAN AN ESSENTIAL ELEMENT OF 18 U.S.C. § 922(a)(5). . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF CITATIONS

**Supreme Court**

Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141 (1978).. . . . . . . . . . . . . . . . . 18

Davis v. United States, 160 U.S. 469, 16 S. Ct. 353 (1895).. . . . . . . . . . . . . . . . 18

In re Winship, 397 U.S. 358, 90 S. Ct. 1068 (1970).. . . . . . . . . . . . . . . . . . . . . . 18


**Circuit Courts of Appeals**

United States v. Baker, 432 F. 3d 1189 (11th Cir. 2005).. . . . . . . . . . . . . . . . . . . 21

United States v. Barrington, 648 F.3d 1178 (11th Cir. 2011). . . . . . . . . . . . . . 13, 19

United States v. Cano, 289 F.3d 1354 (11th Cir. 2002).. . . . . . . . . . . . . . . . . . . . 33

United States v. Corvo, 163 Fed. Appx. 839 (11th Cir. 2006). . . . . . . . . . . . . . . . 21

*United States v. Gari, 572 F.3d 1352 (11th Cir.  2009).. . . . . . . . . . . . . . . . . . . . 33

United States v. Gore, 298 F.3d 322 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Harrell, 637 F.3d 1008 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . 25

United States v. Herrera-Martinez, 525 F.3d 60 (1st Cir. 2008). . . . . . . . . . . . . . 25

United States v. Hird, 398 Fed. Appx. 584 (11th Cir. 2010).. . . . . . . . . . . . . . . . . 21

United States v. Ibarguen-Mosquera, 634 F.3d 1370 (11th Cir. 2011) . . . . . . . . . 18

*United States v. Kloess, 251 F.3d 941 (11th Cir. 2001). . . . . . . . . . . . . . . 23, 24, 32

United States v. Lejarde–Rada, 319 F.3d 1288 (11th Cir. 2003)............... 21

United States v. Lopez, 2 F.3d 1342 (5th Cir. 1993),
    affirmed, 514 U.S. 549, 115 S. Ct. 1624 (1995)....................... 23

*United States v. McArthur, 108 F.3d 1350 (11th Cir.1997). .............. 26, 35

United States v. Mount, 161 F.3d 675 (11th Cir. 1998). ................. 34, 35

United States v. Outler, 659 F.2d 1306 (5th Cir. Unit B Oct. 1981)........... 26

United States v. Rodriguez, 132 F.3d 208 (5th Cir. 1997). .................. 22

United States v. Snipes, 611 F.3d 855 (11th Cir. 2010). .................... 19

United States v. Steele, 147 F.3d 1316 (11th Cir. 1998).................... 26

United States v. Thomas,  916 F.2d 647 (11th Cir. 1990).................... 36

United States v. Tyson, 653 F.3d 192 (3rd Cir. 2011)....................... 22

## U.S. Constitution

U.S. Const. Amend. V........................................... 17, 18, 35

## Statutes

18 U.S.C. § 922(a)............................................... 28

18 U.S.C. § 922(a)(1)(A)........................................... 3

*  **18 U.S.C. § 922(a)(5). ................. 2, 3, 5, 14-16, 18-24, 26, 27, 30-32, 34

18 U.S.C. § 923............................................... 33

18 U.S.C. § 923(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(a)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

18 U.S.C. § 1028A(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3583(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 3665. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 885(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 408(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Crime Control Act of 1990, Pub.L. 101–647, § 2201, 104 Stat 4789. . . . . . . . . 32

Gun Control Act of 1968, Section 102,
    Pub.L. No. 90-618, 82 Stat. 1213. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 31

Omnibus Crime Control and Safe Streets Act of 1968,
    Pub.L. No. 90-351, 82 Stat. 197. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 31

## Other Authorities

27 C.F.R. § 478.47. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

27 C.F.R. § 478.141. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Eleventh Circuit Pattern Jury Instructions (Criminal Cases)
    No. 34.2 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

\*   \*\*Eleventh Circuit Pattern Jury Instructions (Criminal Cases)

No. 34.2 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 16, 20, 35

Fed. R. Crim. P. 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Model Criminal Jury Instructions for the District Courts of the

Ninth Circuit No. 8.57  (September 2010) .. . . . . . . . . . . . . . . . . . . . . . . . . 22

Senate Report No. 90-1097,1968 U.S.C.C.A.N. 2112. . . . . . . . . . . . . . . . . . 28, 31

Special Agent Information Packet, U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, http://www.atf.gov/publications/ download/p/atf-p-2310-4.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

viii

## TABLE OF RECORD REFERENCES IN THE BRIEF

Docket #                                                          Brief Page #

1          Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 19

26         Proposed Jury Instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35         Discussion Draft of Jury Instructions. . . . . . . . . . . . . . . . . . . . . . 8

38-3       Court's Instructions to the Jury. . . . . . . . . . . . . . . . . . . . . . . 7, 8, 35

39         Jury Verdict. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

42         Order of Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

55         Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

57         Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

67         Transcript of Charge Conference. . . . . . . . . . . . . . . . . . . . . . . . 7, 8

68         Transcript of First Day of Trial 7/26/2011. . . . . . . . . . . . . . . . 8-10

69         Transcript of Second Day of Trial 7/27/2011. . . . . 7, 8, 10, 11, 13, 35

70         Transcript of Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>STATEMENT OF JURISDICTION</u>

The United States District Court, Northern District of Florida, Tallahassee Division, had jurisdiction pursuant to 18 U.S.C. § 3231.  Following the jury's verdict of guilty on one count, R39, the district court orally imposed judgment and sentence on November 16, 2011, R70, and entered written judgment and sentence on November 22, 2011, R42.  Appellant filed a notice of appeal on December 5, 2011. R57.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be taken to the Supreme Court.

<u>STATEMENT OF THE ISSUES</u>

I.     WHETHER THE EVIDENCE WAS INSUFFICIENT TO
       CONVICT WHEN NO EVIDENCE WAS PRESENTED
       AS TO WHETHER THE TRANSFEREE OF THE
       FIREARM WAS OR WAS NOT A LICENSED
       IMPORTER, MANUFACTURER, DEALER, AND
       COLLECTOR OF FIREARMS, AN ESSENTIAL
       ELEMENT OF 18 U.S.C. § 922(a)(5)

II.    WHETHER THE DISTRICT COURT
       UNCONSTITUTIONALLY RELIEVED THE
       GOVERNMENT OF ITS BURDEN TO PROVE EVERY
       ELEMENT BEYOND A REASONABLE DOUBT BY
       INSTRUCTING THE JURY THAT THE SALE OF A
       FIREARM TO A LICENSED DEALER WAS AN
       IRRELEVANT EXCEPTION TO THE PROHIBITION
       ON SALES TO NON-RESIDENTS RATHER THAN AN
       ESSENTIAL ELEMENT OF 18 U.S.C. § 922(a)(5)

## STATEMENT OF THE CASE

(i)    <u>Nature of the Case and Statement of Non-incarceration</u>

This is the direct appeal of a felony judgment and sentence of probation. Appellant is not presently incarcerated.

(ii)    <u>Course of Proceedings and Dispositions in the Court Below</u>

A federal grand jury charged Appellant, Theodore Stewart Fries, with (Count I) dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); and (Count II) knowingly selling a Kimber 45-caliber pistol to a non-state resident on or about April 24, 2012, in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D).  R1P1-2. The indictment also sought forfeiture of firearms pursuant to 18 U.S.C. § 3665, <u>id</u>., but no forfeiture was ordered.

At the end of a jury trial, he was acquitted of Count I and found guilty of Count II.  R39P1.  The district court varied beneath the recommended guideline range to sentence Fries to 2 years' probation.  The district court also imposed a $100 special monetary assessment.  R55P1-8.

Undersigned counsel filed a Corrected *Anders* Brief.  On September 14, 2012, this Court ordered undersigned counsel to file a merits brief, stating that it had found "at least two issues of arguable merit: (1) whether the district court effectively removed from the burden of proof regarding an element of the 18 U.S.C. § 922(a)(5)

3

offense by instructing the jury that the sale of a firearm to a licensed dealer was an exception to the prohibition on sales to non-residents that did not apply in that case; and (2) whether the evidence was insufficient to convict when no evidence was presented as to whether the buyer of the firearm was a licensed dealer."

(iii)    <u>Statement of the Facts</u>

The bulk of the testimony in the record dealt with Count I.  Because Fries was acquitted of Count I, this Corrected Initial Brief of Appellant details only facts relevant to the trial for Count II.

*1.    The charge at issue defines the transferee's status with respect to a firearms license as an essential element, but the district court's instructions  took that issue away from the jury*

Count II charged that on or about April 24, 2010, Fries,

> a resident of the State of Florida, not being a licensed importer, manufacturer, dealer, and collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, **did wilfully transfer and sell a firearm**, that is, a Kimber, Model Warrior, 45 caliber pistol, **to a person not being a licensed importer, manufacturer, dealer, and collector of firearms**, within the meaning of Chapter 44, Title 18, United States Code, knowing and with reasonable cause to believe that said person was not then residing in the State of Florida at the time of the aforesaid transfer and sale of the firearm, [i]n violation of Title18, United States Code, Sections 922(a)(5) and 924(a)(1)(D).[1]

R1P1-2 (emphases supplied).

---

[1] Section 924(a)(1)(D) provides for the possible penalties.

4

The statute on which the indictment is premised, 18 U.S.C. § 922(a)(5), states:

It shall be unlawful ....for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to **transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector)** who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides; except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes[.]

(Emphasis supplied.)

This Court's pattern jury instruction provides in relevant part, that

Under certain circumstances, it's a Federal crime for anyone who isn't a licensed dealer to sell or transfer a firearm to someone who lives in another state.
The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
(1)    the Defendant willfully transferred, sold, or delivered a firearm to another person;
(2)    at the time, neither the Defendant **nor the person who received the firearm was a licensed firearms dealer, importer, manufacturer, or collector;** and
(3)    the Defendant knew or had reasonable cause to believe that the person who received the firearm resided in another state.
Eleventh Circuit Pattern Jury Instructions (Criminal Cases) No. 34.2 (2010)

(emphasis supplied).

5

The jury instruction given by the district court as to Count II varied from the pattern instruction in relevant part by excluding the element that the buyer not be a licensed firearms dealer, importer, manufacturer, or collector. The instruction given by the district court stated:

> Now Count Two, which charges the defendant with willfully selling or transferring a firearm to a nonresident of Florida.
>
> As you know from my discussion of Count One, federal law requires a license to engage in the business of dealing in firearms. A person without a license can legally sell or transfer a firearm so long as the person is not engaged in the business of dealing in firearms.
>
> **But a sale or transfer by an unlicensed person can only be made to a person who resides in the same state. Thus, a Florida resident who does not have a federal license cannot legally sell or transfer a firearm to a person who does not reside in Florida. There are exceptions -- for a transfer to a licensed dealer, for a firearm that passing through inheritance, and for a firearm that is being loaned or rented for sporting purposes -- but the exceptions are not involved in this case.**
>
> The defendant can be found guilty on Count Two if, and only if, all the following facts have been proved beyond a reasonable doubt:
>
> **First, the defendant did not have a Federal Firearms License.**
>
> **Second, the defendant sold or transferred the firearm described in the indictment in Florida;**
>
> **Third, the defendant knew or had reasonable cause to believe that the person who was acquiring the firearm through the sale or transfer did not reside in Florida; and,**
>
> **Fourth, the defendant acted willfully.**
>
> For purposes of the federal firearms laws, a person who lives in the United States and who has a single home resides in the state where the home is located. A person who lives in the United States and has more than one home resides in the state with the home in which the person is staying at the time, or if the person is not staying in any of his homes, the home in which the person last stayed. A person is not a

6

resident of a state the person merely visits, even if the person temporarily stays with a relative in that state.

A sale or transfer is made to the person who is actually acquiring the firearm through the sale or transfer, even if another person pretends to be acquiring the firearm in order to evade federal law.

I defined "willfully" while discussing Count One. The same definition applies to Count Two.

You will note from the instructions I have given you on each count that the focus is on what the defendant did and believed, not on what the investigating officers did. As part of an investigation, a law enforcement officer may properly pretend to be someone he is not, provide for false information to support the pretense, and provide an opportunity for a person to commit a crime.

R69P585-87 (emphases supplied); see also R38-3P7-9 (written instructions).

> 2. *The focus of discussions about the Count II jury instructions was on Fries' defense that he believed the agent/buyer could have been a resident of more than one state, and did not focus on the transferee's status*

Before trial, Fries asked the district court to modify Pattern Jury Instruction 34.2 so as to address the defense that Fries believed the agent/buyer could have been a resident of more than one state.  R26; R67P3-4, 7.  The district court briefly discussed with counsel what was and was not at issue in this trial with respect to Count II:

> [BY THE COURT]  I take it in this case the only claim is that Mr. Fries knew he was unlicensed and knew he was selling to somebody that was a nonresident.  There is no claim about speeding [sic] or anything like that.
> MR. COODY [AUSA]: Your Honor, that's accurate.

7

R67P5.  Defense counsel made no comment about that, returning a moment later to his request for a jury instruction arguing the defense about Fries' belief as to dual residency.  R67P6-8.  No mention was made as to the element of proving the buyer was not a licensed firearms dealer, importer, manufacturer, or collector.

The district court convened a charge conference at the end of the first day of the two-day trial with a discussion draft of the jury instructions.  That draft excluded the element that the buyer not be a licensed firearms dealer, importer, manufacturer, or collector, referring to that as an exception not involved in this case.   R68P297; R35P8-9.  Neither party had an objection to that proposed instruction. R68P298-300. That draft was adopted as the final jury instruction, and it was read to the jury at the close of the evidence as stated above, without objection.  R69P585-87; R38-3P7-9.

3.    *Trial evidence regarding Count II made no mention of whether the buyer was or was not a licensed firearms dealer, importer, manufacturer, or collector*

ATF Tampa Division Counsel Eileen Husselbaugh testified about the Federal Firearms License and how it may be acquired, R68P140-41, but she said nothing about whether ATF agents generally, or ATF Special Agent Donald Williams and William Lee Visnovske specifically, had such a license or lawfully could obtain such a license.

8

Williams and Visnovske met at the Tallahassee Gun and Knife Show on or about December 12, 2009, where Williams asked Visnovske to purchase, undercover, handguns from Fries.  R68P162-66.  Visnofske said he was asked to go undercover because he was a Georgia resident:

> Q. Now, the fact that you're a Georgia resident, did that have any bearing of you being asked to assist in this investigation?
> A. Yes, sir. There were three agents -- currently there's only two agents -- in the Tallahassee Field Office that are Georgia residents.
> Q. And what was the reason for having a Georgia resident assist Special Agent Williams in this investigation?
> A. It's illegal for a person to sell a handgun to an out-of-state resident. If you live in Florida, you can sell a handgun to a neighbor if you choose; but, if your neighbor happens to be across the line, like myself, in Georgia, that's a violation of federal law.

R68P164-65.

Visnovske, posing as "Peebo," identified himself to Fries as a "Georgia Boy." R68P172.  He said his little brother was attending college at University of Florida, and he visited his brother once a month, coming from the family's farm in Georgia, where he said he lived.  R68P186-90, 243-44, 250.  Fries told Peebo/Visnofske "[t]hat he couldn't sell to an out-of-state resident; that I needed to be from Florida." R68P176.  Agent Williams was by his side and volunteered "that he was a Florida resident."  R68P177.  Fries said he would sell the gun to Williams, and "'[n]ow what you do with it, I don't care[.]'"  R68P177.

9

In his multiple conversations with Fries, Peebo/Visnofske said nothing about the fact that it would be legal to sell to an out-of-state resident who is a licensed firearms dealer, importer, manufacturer, or collector.  He did not say he was or was not a licensed dealer, and he did not say that he represented himself to Fries as not possessing such a license.  The only license they discussed was when Fries "asked to see a Florida driver's license."  R68P172; <u>see also</u> R68P175-76.

Peebo/Visnofske's pursuit of Fries finally paid off on April 24, 2010, when he, again with Williams, showed up at another gun show in Tallahassee.  Fries said he had just received a Kimber handgun in a trade but was willing to sell it for $1200.  Peebo/Visnofske agreed to buy the gun and counted out the cash in front of Fries.  Fries did not ask either Peebo/Visnofske or Williams for identification.  R68P214-21, 245-47.

Williams, like Peebo/Visnofske, did not represent himself to Fries as not possessing a dealer's license, and he did not mention ever discussing with Fries that a sale would be legal if the out-of-state buyer is licensed.  R68P252-R69P357.  The buyer's possible status as a licensee was never mentioned when Williams, in re-direct examination, described the law as he understood it:

> Q. [BY AUSA] Is there a distinction to be made between the defendant, who is an unlicensed individual, and a person who holds a license as a Federal Firearms Licensee?

A. [BY WILLIAMS] Yes.
Q. Can a Federal Firearms Licensee sell a gun to an individual -- or are
there mechanisms to transfer a gun lawfully to someone who lives out
of state?
A. Yes.

R69P353-54.

Fries testified on his own behalf, confirming in large part the Government's

version of what happened.  The only aspect of the buyer's legal status mentioned by

Fries was the buyer's residence.  When asked by defense counsel why he thought he

could legally sell that gun to Peebo/Visnovske, Fries said:

A.     Well, the out-of-state rule is not hard-and-fast.  There are several
exceptions to it, common-sense exceptions to it.
Q.     Let's talk about what your understanding of it is, okay?
A.     Which one do you want me to look at?
Q.     Well, I don't really need you to look at that in particular.  I just
want to identify that as what you relied on.
A.     Oh, okay.  It's on the website, and there's a question that says,
"May a person who is not an alien who resides in one state and owns
property in another state purchase a handgun in either state?"
Q.     So that was something you read.  Did you have that with you on
the day that you sold Mr. Visnovske the firearm?
A.     No.
Q.     Is that something that you had studied in preparation of selling a
firearm to Agent Visnovske that particular day?
A.     Not really.  Actually, at the time he told it to me, I didn't think a
whole lot about it, but the more I got to thinking, you know, this guy can
buy a gun in Florida; I don't know what the big deal is here.
Q.     So you thought he might qualify for what some people refer to as
dual residency?
A.     Yes.

11

Q.      Now, again, the judge is going to tell the jury exactly what it means. But you tell us, what do you think -- how do you think he qualified for this dual residency?

A.      Well, we can't let them read the dual residency?

Q.      Well, the judge will tell them all about it.

A.      Okay.

Q.      He will instruct them on the law, and they'll get to see that exhibit.  But what I'm asking you about, your reasoning, why is it that you thought that he qualified for dual residency?

 A.      Okay.  The dual residency, it's my belief and my interpretation, when I read it, that it's there to accommodate folks -- and Florida is a really common state for this -- that may live in Ohio, they may live in Georgia, they have a place in Florida, for whatever reason, and it says, if they own it, and they stay there for periods of time, they are allowed to buy a firearm in Florida.

Q.      In your view, at least for the weekends that Peebo was with his brother, was he essentially living there in Florida?

A.      That's what he told me.  I had to believe it.

Q.      Now, some might characterize it, visiting is different from living, but it was your view that these visits qualified as somewhat living there in Florida for at least the weekend?

A.      I worked for a man in Chicago.  He owned a place down in Fort Myers.  He would fly down for weekends.  He never spent a long period of time there, so -- the regulation says a certain period of time, but it doesn't say a day or a year or a month.  He stayed weekends.  He said he stayed there a weekend once a month.  That's fairly a certain period of time to me.

The other aspect was, who owned it?  Well, you know, maybe I stretched on that one.  I don't know if he owns it, or his dad owns, or his mother owns it, but it's a family residence, and I'm just inferring, well, this thing probably fits a family of adults.

Q.      We've talked about it.  Am I correct in saying that -- well, let me ask you:

Is it your view that maybe you were wrong about that, as you sit here today?

A.      As I sit here today, I would like someone to tell me where I'm wrong.

12

Q.    Okay.

A.    That's the neat thing about firearm laws.  No one in the world seems to understand them.

Q.    By the way, in asking you about your understanding of the law, we had some discussion about this.  You thought that, as someone who did not own a firearms license, you could sell a rifle to a noncitizen?

A.    I think that's the common belief, frankly, at gun shows.  I mean, I wasn't surprised the agents thought that.

Q.    So that is sort of a belief that is common among people in gun shows?

A.    Well, I think it comes from the fact that, since dealers can do it, why wouldn't a private be able to do it? That's where it comes from. Once again, you know, I'm finding out here now that may not be legal.

Q.    So really the ultimate question is: When you sold that gun to Agent Visnovske on April 24th, did you think that you were doing something illegal?

A.    No.

Q.    I gather, here again, you wanted to accommodate him; you wanted to sell him a gun; you liked him?

A.    You know, I believed him.  You know, this guy is a Marine veteran.  There is something those guys don't do.  He wouldn't lie to a Marine's father, I don't think.

Q.    Did you think that what you were doing was legal?

A.    I thought it was legal, perfectly legal.

R69P485-93.  See also R69P515-17.  Nowhere in the testimony did Fries say anything about whether he believed Peebo/Visnofske or Williams were or were not licensed to deal in firearms.

(iv)    Standards of Review

Claims of insufficient evidence and jury instruction error not raised in the trial court are reviewed for plain error.  United States v. Barrington, 648 F.3d 1178, 1192-93 (11th Cir. 2011).

13

## SUMMARY OF THE ARGUMENT

I.    The Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the charged offense.  Because no evidence was presented as to one of the essential elements of 18 U.S.C. § 922(a)(5), i.e., whether the buyer was or was not a licensed importer, manufacturer, dealer, and collector of firearms, the judgment should be vacated and the case remanded for entry of a judgment of acquittal.

The error is plain on the face of the statute, which includes in the definition of the crime the requirement that a transfer may not be made to an out-of-state resident "(other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector)."  This Court's pattern jury instruction reaffirms the plainness of the error by setting out the transferee's status as part of the second element of the offense, requiring the jury to find that "at the time [of the transfer], neither the Defendant nor the person who received the firearm was a licensed firearms dealer, importer, manufacturer, or collector." The only other circuit to publish a pattern instruction construing § 922(a)(5) similarly defined the second element.  A number of other circuits also have referred to transferee's status as a licensee as an essential part of the definition of the crime in discussing the proof required by § 922(a)(5).

Even if this Court goes beyond the statute's plain language, the plainness of the error remains self-evident.  Congress did not designate the transferee's status as an

14

exception to the statute, and the district court provided no authority to conclude otherwise. Congress separately created two express exceptions under an "except" clause at the end of the statute for a transfer that carries out a bequest or intestate succession, and for the loan or rental of a firearm for temporary use for lawful sporting purposes. Plainly, Congress knew how to create an exception, having created two in that statute. It can hardly be said to have created a third one *sub silentio*. For the same matter, Congress knew how to create affirmative defenses, but it said nothing about doing that here.

The fact that Congress used parentheticals is of little importance. The status of both the transferor and the transferee is crucial to the meaning and mission of the statutory proscription: to prevent the unlicensed transfer of firearms between persons of different states. The parentheticals modify for clarity which transfers are prohibited, and the pattern instructions reflect that clarification. Congress has used parentheticals in other statutes to modify or clarify the elements, and this one is not materially different. Reading the parentheticals in § 922(a)(5) any other way would distort the plain meaning and purpose of the statute and render the parenthetical clauses surplusage.

Congress's legislative history further demonstrates that the transferee's possession or lack of possession of a license to import, manufacture, deal, or collect, was central to Congress's regulation of firearms and was intended to be essential to

15

§ 922(a)(5). The facts of this case also demonstrate that the Government is well-situated to adduce evidence tending to prove whether the transferee did or did not have a license to import, manufacture, deal, or collect firearms. Its two star witnesses, ATF Agents Visnofske and Williams, could have simply answered that question had the prosecutor asked it.

The total absence of evidence as to an essential element constitutes reversible plain error that affects the defendant's substantial rights and affects the fairness, integrity, and public reputation of the proceeding.

II.     Just as it is plain that § 922(a)(5) required the Government to prove the transferee's status with respect to possession of a license, it is equally plain that the district court erred by taking the issue away from the jury. The district court should have, instructed the jury to find that, at the time of the transfer, "neither the Defendant nor the person who received the firearm was a licensed firearms dealer, importer, manufacturer, or collector." Eleventh Circuit Pattern Jury Instructions (Criminal Cases) No. 34.2 (2010). It did not do that. Instead, it told jurors that "a Florida resident who does not have a federal license cannot legally sell or transfer a firearm to a person who does not reside in Florida. There are exceptions -- for a transfer to a licensed dealer, for a firearm that passing through inheritance, and for a firearm that is being loaned or rented for sporting purposes -- but the exceptions are not involved in this case." Thus, the district court effectively relieved the Government of its

16

burden to prove an essential element in violation of Appellant's due process rights. U.S. Const. Amend. V.

Failure to instruct the jury regarding an element of the offense is plain error where, as here, the government introduces no evidence regarding the element in question. However, this Court need not reach that issue because precedent establishes that only if the evidence is sufficient for a properly instructed jury to have convicted does it need to determine whether the district court's erroneous jury instruction constituted plain error requiring reversal and remand for a new trial. Here, as stated in Issue I, the evidence was insufficient, so the remedy of reversal for a new trial should be considered only in the alternative.

<u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

I.   WHETHER THE EVIDENCE WAS INSUFFICIENT TO
     CONVICT WHEN NO EVIDENCE WAS PRESENTED
     AS TO WHETHER THE TRANSFEREE OF THE
     FIREARM WAS OR WAS NOT A LICENSED
     IMPORTER, MANUFACTURER, DEALER, AND
     COLLECTOR OF FIREARMS, AN ESSENTIAL
     ELEMENT OF 18 U.S.C. § 922(a)(5)

It has long been established under the Fifth Amendment's Due Process Clause

that "[t]he burden of proof is never upon the accused to establish his innocence, or

to disprove the facts necessary to establish the crime for which he is indicted. It is on

the prosecution from the beginning to the end of the trial, and applies to every

element necessary to constitute the crime." <u>Davis v. United States</u>, 160 U.S. 469,

487, 16 S. Ct. 353, 358 (1895); <u>see also</u> <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct.

1068, 1072 (1970) ("the Due Process Clause protects the accused against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged."); <u>United States v. Ibarguen-Mosquera</u>, 634 F.3d

1370, 1381 (11th Cir. 2011) ("The Constitution prohibits presuming an ingredient of

an offense upon proof of other facts, or shifting certain elements of an offense from

an element to an affirmative defense"). Because no evidence was presented as to one

of the essential elements, whether the buyer was or was not a licensed importer,

manufacturer, dealer, and collector of firearms, the judgment should be vacated and

the case remanded for entry of a judgment of acquittal. <u>Burks v. United States</u>, 437

18

U.S. 1, 10, 98 S. Ct. 2141, 2147 (1978) (holding that the "Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding").

Fries did not move for judgment of acquittal on this ground. Accordingly, this Court reviews the sufficiency of the evidence supporting this conviction for plain error. United States v. Barrington, 648 F.3d 1178, 1192 (11th Cir. 2011). That requires a showing that the error is plain, affects Fries' substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings. E.g. United States v. Snipes, 611 F.3d 855, 867 n.7 (11th Cir. 2010).

### A.    The error was plain without resort to any statutory construction

The error and its plainness are self-evident from examining the indictment, the statute, and this Court's pattern jury instructions, all of which are quoted supra pp. 4-7. The indictment charged it as an element, alleging that Fries "did wilfully transfer and sell a firearm, that is, a Kimber, Model Warrior, 45 caliber pistol, **to a person not being a licensed importer, manufacturer, dealer, and collector of firearms**." R1P2 (emphasis supplied). The statute states the requirement in defining the elements, albeit parenthetically. 18 U.S.C. § 922(a)(5) ("other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector."). This Court's pattern jury instruction – one of only two such pattern instructions among the

circuits[2] – interpreted the statute to make elimination of the buyer's status as a dealer part of the second essential element.  Eleventh Circuit Pattern Jury Instructions (Criminal Cases) No. 34.2 (2010) ("(2) at the time, neither the Defendant **nor the person who received the firearm was a licensed firearms dealer, importer, manufacturer, or collector**")  (emphasis supplied). This Court's earlier version of the instruction likewise viewed the second element of § 922(a)(5) to require the jury to make a finding as to the buyer's status as a licensee.[3]

No construction of the provision's plain meaning is required because where the explicit language of the statute specifically resolves an issue, the law is plain or

---

[2] Undersigned counsel reviewed the published pattern jury instructions of the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth circuits.  Court librarians and/or clerks for the Second, Fourth, and District of Columbia Circuits advised undersigned counsel that they do not publish pattern jury instructions.

[3] It stated:

First:      That the Defendant wilfully transferred, sold or delivered a firearm to another person as charged.

Second    **That neither the Defendant nor the person to whom the firearm was transferred was a licensed firearms importer, manufacturer, dealer or collector at the time of such transfer**.

Third:     That the Defendant knew or had reasonable cause to believe that the person to whom the firearm was transferred resided in a state other than the state in which the Defendant resided.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) No. 34.2 (2003).

20

obvious.  United States v. Lejarde–Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).  See

United States v. Hird, 398 Fed. Appx. 584, 587 (11th Cir. 2010) (applying plain

language of guidelines to find plain error); United States v. Baker, 432 F. 3d 1189,

1212 (11th Cir. 2005) (finding plain error for introduction of evidence in violation of

Fed. R. Crim. P. 404(b)); United States v. Corvo, 163 Fed. Appx. 839, 842 (11th Cir.

2006) (finding district court committed plain error by imposing supervised release in

violation of plain language of 18 U.S.C. § 3583(h)); United States v. Gore, 298 F.3d

322, 324–25 (5th Cir. 2002) (holding that error was "plain" when the district court's

ruling was obviously contrary to the text of a federal statute).  If any statutory

construction were necessary, this Court's pattern jury instruction already provided it.

If any further examination were required to determine the plainness of the

error, this Court should look at the only other pattern jury instruction adopted by any

of the circuits construing § 922(a)(5).  The Ninth Circuit provides:

> The defendant is charged in [Count _____ of] the indictment
> with the unlawful disposition of a firearm in violation of Section
> 922(a)(5) of Title 18 of the United States Code. In order for the
> defendant to be found guilty of that charge, the government must prove
> each of the following elements beyond a reasonable doubt:
> First, the defendant willfully [sold] [traded] [gave] [transported]
> [delivered] [transferred] a [*specify firearm*] to *[name of unlicensed
> dealer]*;
> **Second, neither the defendant nor [*name of unlicensed dealer*]
> was licensed as a firearm [dealer] [importer] [manufacturer]
> [collector]; and**

Third, the defendant knew or had reasonable cause to believe that [*name of unlicensed dealer*] was not a resident of the same state in which the defendant resided.

Model Criminal Jury Instructions for the District Courts of the Ninth Circuit No. 8.57 (September 2010) (emphasis in boldface supplied) (last accessed online September 24, 2012, at http://www3.ce9.uscourts.gov/web/sdocuments.nsf/ ddfcae883f401d45882576f100661bbb/9fd68ba37247c4108825773f0069a1d3/$FILE/Criminal%208.57.wpd).

No other circuits appear to have directly addressed the question,[4] but a number of circuits have referred to the transferee's status as a licensee as an essential part of the definition of the crime.  See United States v. Tyson, 653 F.3d 192, 205 (3rd Cir. 2011) ("Proof that a defendant violated § 922(a)(5) requires substantial evidence of three elements: **(1) neither the defendant nor the recipient of the firearm were licensed importers, manufacturers, dealers, or collectors**; (2) the defendant willfully transferred the firearm to another person; and (3) the defendant knew or had reasonable cause to believe that the person to whom he transferred the firearm resided in a state other than the defendant's state of residence. ") (emphasis supplied); United States v. Rodriguez, 132 F.3d 208, 211 (5th Cir. 1997) ("Title 18, § 922(a)(5)

---

[4] Appellant suggests the logical explanation for why circuits have not squarely addressed the issue is that the transferee's status is an obvious element and is easily established by the Government such that no need to litigate the question on appeal has arisen, until now.

prohibits the sale of firearms to out-of-state residents, **where either the seller or the purchaser lacks a federal firearms license**") (emphasis supplied); United States v. Lopez, 2 F.3d 1342, 1353 n.23 (5th Cir. 1993) (referring to § 922(a)(5) as "prohibit[ing] non-licensees from transferring any firearm (other than a rifle or shotgun) **to a non-licensee resident** 'in any State other than that in which the transferor resides.'") (emphasis supplied), affirmed, 514 U.S. 549, 115 S. Ct. 1624 (1995).

> **B.    Even if statutory construction analysis is applied, the plainness of the error remains self-evident**

This Court previously examined the question of how to discern Congress's intent to create elements of a crime when the text of the statute is not clear due to an exception Congress included in the statute:

> To determine whether a statutorily created exception to a criminal offense is an element of the crime, we undertake a three-part inquiry. United States v. McArthur, 108 F.3d 1350, 1353 (11th Cir.1997). First, we look at the language and structure of the statute itself to determine whether the exception is part of the general statutory offense. Second, we look at the legislative history of the statute to determine whether Congress intended to make the exception an element of the crime. Finally, we look to see whether the government is well-situated to adduce evidence tending to prove the applicability of the exception. Id. If the answers to these three questions are "yes," then the exception is an element of the offense.

United States v. Kloess, 251 F.3d 941, 944 (11th Cir. 2001).

1.    *Congress explicitly created exceptions <u>after</u> using parentheticals to define the crime*

The <u>Kloess</u>/<u>McArthur</u> analysis necessarily begins with determining if Congress created an "exception" to the definition of a crime in the statute's text. In this case, it did – but the exceptions have nothing to do with the buyer's status as a licensee. After defining the offense in the first 84 words, Congress devoted the next 74 words to define two exceptions:

> **except that this paragraph shall not apply to** (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes[.]

18 U.S.C. § 922(a)(5) (emphasis supplied). These two exceptions were separately added to the statute. <u>See</u> <u>infra</u> p. 31.

Congress knew it was defining exceptions. It even used the word "except" to define them. It would require a bizarre, strained construction to find that Congress intended to create another exception in the statute without identifying it as such. Plainly, Congress knew how to create an exception, having created two in that statute. It can hardly be said to have created a third one *sub silentio*. For the same matter, Congress knew how to create affirmative defenses, but it said nothing about doing that here.

24

The fact that Congress used parentheticals is of little importance.  Indeed, Congress used that same parenthetical twice in the statute, once to define the transferor's status and once to define the transferee's status.  In both instances, that status is crucial to the meaning and mission of the statutory proscription.  It could not be logically argued that Congress intended the second parenthetical to be an exception but not the first.   The purpose of the statute is to prevent the **unlicensed** transfer of firearms between persons of different states.  If the transfer is authorized by license, the transfer falls outside the criminal proscription without ever reaching one of the exceptions.  Only after the unlicensed transfer between persons of different states has been established would the exceptions potentially come in to play.

Rather than creating exceptions, the parentheticals modify the phrases in which they are embedded.  Read with an eye to grammatical proximity, the parentheticals modify for clarity what transfers are prohibited by the elements of the crime.  The pattern instructions quoted above reflect that clarification.  Congress has used parentheticals in other statutes to modify or clarify the elements, and this one is not materially different.  See United States v. Harrell, 637 F.3d 1008, 1012 (9th Cir. 2011) (concluding that the plain text of 18 U.S.C. § 1028A(c), which included parenthetical references, demonstrates that the "parentheticals serve as descriptive aids intended by Congress 'to make reading the statute easier'"); United States v. Herrera-Martinez, 525 F.3d 60 (1st Cir. 2008) (holding that Congress's inclusion of a parenthetical in the

25

middle of a paragraph describing an element of a criminal violation of the Social Security Act in 42 U.S.C. § 408(a), substantively broadened the statute's reach).

Reading the parentheticals in § 922(a)(5) any other way would distort the plain meaning and purpose of the statute and render the parenthetical clauses surplusage. United States v. McArthur, 108 F.3d 1350, 1353 (11th Cir. 1997), said statutory language is an element if one cannot omit it "without doing violence to the definition of the offense....[W]here 'an exception ... [is] so necessary to a true definition of the offense ... the elements of the crime are not fully stated without the exception." Id. (quoting United States v. Outler, 659 F.2d 1306, 1309-10 (5th Cir. Unit B Oct. 1981)).[5]

Given that the parentheticals are not exceptions but clarifying modifications of the elements, there is no need to venture into the second part of the analysis,

---

[5] Outler was overruled on other grounds in United States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998) (en banc). Steele held that an indictment of a practitioner for unlawfully dispensing drugs need not aver that it was done outside the course of professional practice. The en banc Court said its "conclusion is compelled by 21 U.S.C. § 885(a)(1) ('It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any ... indictment ... ')." Id. Section 922(a)(5) contains no provision similar to the one that drove the outcome in Steele.

legislative history.  Nonetheless, should this Court wish to do so, the following legislative history supports Fries.

> 2.     *Legislative history likewise indicates that the transferee's status was necessary to the definition of the crime*

Section 922(a)(5) was adopted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, 82 Stat. 197, 229, and was later amended by Section 102 of the Gun Control Act of 1968, Pub.L. No. 90-618, 82 Stat. 1213, 1217-18.  The Senate Judiciary Committee said the "principal purposes of" Title IV were to

> aid in making it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States.
>
> The ready availability; that is, ease with which any person can anonymously acquire firearms (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotic addicts, mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest) is a matter of serious national concern.
>
> The existing Federal controls over interstate and foreign commerce in firearms are not sufficient to enable the States to effectively cope with the firearms traffic within their own borders through the exercise of their police power.  Only through adequate Federal control over interstate and foreign commerce in firearms, and over all persons engaging in the business of importing, manufacturing, or dealing in firearms, can this problem be dealt with, and effective State and local regulation of the firearms traffic be made possible.
>
> It is not the purpose of the title to place any undue or unnecessary restrictions or burdens on responsible, law-abiding citizens with respect

27

to the acquisition, possession, transporting, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity.  The title is not intended to discourage or eliminate the private ownership of such firearms by law-abiding citizens for lawful purposes, or to provide for the imposition, by regulations, of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of the title.

Pub.L. No. 90-351, Omnibus Crime Control and Safe Streets Act of 1968, Senate Report No. 90-1097,1968 U.S.C.C.A.N. 2112, 2113-14.

The title would have the effect of channeling interstate and foreign commerce in firearms other than rifles and shotguns **through federally licensed importers, manufacturers, and dealers**, thereby prohibiting the commercial mail-order traffic in firearms other than rifles and shotguns to unlicensed persons.  This will enable the States to more effectively control this traffic within their own jurisdictions under the police power granted to them by the Constitution."

Id., 1968 U.S.C.C.A.N. at 2166 (emphasis supplied).

Paragraph (4) of § 901(a) of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 contains a specific congressional finding that the acquisition of firearms other than a rifle or shotgun "**by nonlicensed individuals**, from a place other than their State of residence, has materially tended to thwart the effectiveness of State laws and regulations."  (Emphasis supplied).  See also 1968 U.S.C.C.A.N. 2112, 2198.

To carry out the mission of Title IV, Congress enacted 18 U.S.C. § 922(a):

**§ 922. Unlawful acts**

28

"(a) It shall be unlawful-

"(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce.

"(2) for any importer, manufacturer, or dealer licensed under the provisions of this chapter to ship or transport in interstate or foreign commerce, any firearm other than a rifle or shotgun, or ammunition to any person other than a licensed importer, licensed manufacturer, or licensed dealer, except that-

"(A) this paragraph shall not be held to preclude a licensed importer, licensed manufacturer, or licensed dealer from returning a firearm or replacement firearm of the same kind and type to a person from whom it was received;

"(B) this paragraph shall not be held to preclude a licensed importer, licensed manufacturer, or licensed dealer from depositing a firearm for conveyance in the mails to any officer, employee, agent, or watchman who, pursuant to the provisions of section 1715 of title 18 of the United States Code, is eligible to receive through the mails pistols, revolvers, and other firearms capable of being concealed on the person, for use in connection with his official duty

"(C) nothing in this paragraph shall be construed as applying in any manner in the District of Columbia, the Commonwealth of Puerto Rico, or any possession of the United States differently than it would apply if the District of Columbia, the Commonwealth of Puerto Rico, or the possession were in fact a State of the United States.

"(3) for any person **other than a licensed importer, licensed manufacturer, or licensed dealer** to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, in which he maintains a place of business)-

"(A) any firearm, other than a shotgun or rifle, purchased or otherwise obtained by him outside that State ;

"(B) any firearm, purchased or otherwise obtained by him outside that State, which it would be unlawful for him to purchase or possess in the State or political subdivision

29

thereof wherein he resides (or if the person is a corporation or other business entity, in which he maintains a place of business).

"(4) for any person, other than a licensed importer, licensed manufacturer, or licensed dealer, to transport in interstate or foreign commerce any destructive device, machinegun (as defined in section 5848 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary.

"(5) for any person to transfer, sell, trade, give, transport, **or deliver to any person (other than a licensed importer, licensed manufacturer, or 1icensed dealer)** who resides in any State other than that in which the transferor resides (or in which his place of business is located if the transferor is a corporation or other business entity) -

"(A) any firearm, other than a shotgun or rifle;

"(B) any firearm which the transferee could not lawfully purchase or possess in accord with applicable laws, regulations or ordinances of the State or political subdivision thereof in which he transferee resides (or in which his place of business is located if the transferee is a corporation or other business entity).

"This paragraph shall not apply to transactions between licensed importers, licensed manufacturers, and licensed dealers.

"(6) for any person in connection with the acquisition or attempted acquisition of any firearm from a licensed importer, licensed manufacturer, or licensed dealer, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit my false or fictitious or misrepresented identification, intended or likely to deceive such importer, manufacturer, or dealer with respect to any fact material to the lawfulness of the sale or other disposition of such firearm under the provisions of this chapter.

(Emphases supplied.)

The Senate Judiciary Committee stated that it designed § 922(a)(5)

to implement section 922(a)(2) of the title, as well as State and local firearms control provisions by prohibiting any unlicensed person from transferring in any way a firearm, other than a rifle or shotgun, **to another unlicensed person who resides in another state**.  The prohibition is extended to a rifle or shotgun if the State or local law of the place of residence of the transferee would be violated by the purchase or possession of the weapon. The present Federal Firearms Act contains no comparable provision.

Pub.L. No. 90-351, Omnibus Crime Control and Safe Streets Act of 1968, Senate Report No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2203 (emphasis supplied).

In that same year Congress amended 18 U.S.C. § 922(a)(5) to eliminate the shotgun or rifle exception and to add exceptions for transfers by testate or intestate succession and for temporary loans for lawful sporting purposes:

"(5) for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe resides in the State other than that in which the transferor resides (or other than that in which its place of business is located if the transferor is a corporation or other business entity); except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes; []

Section 102 of the Gun Control Act of 1968, Pub.L. No. 90-618, 82 Stat. 1213, 1217-18.

31

The language of § 922(a)(5) was amended in 1990 in a manner not relevant to this argument, by striking "resides" the first place such term appears and all that follows through "(or other than that in which its place of business is located if the transferor is a corporation or other business entity);" and inserting "does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides;".  Crime Control Act of 1990, Pub.L. 101–647, § 2201, 104 Stat 4789, 4856.  Since 1990, the statute has remained in its present form.

All of this history demonstrates that the transferee's possession or lack of possession of a license to import, manufacture, deal, or collect, was central to Congress's regulation of firearms and was intended to be essential to 18 U.S.C. § 922(a)(5).

> ### 3.  *The Government was well-situated to adduce evidence demonstrating the transferee's status*

The third part of the analysis instructs the Court to "see whether the government is well-situated to adduce evidence tending to prove the applicability of the exception." Kloess, 251 F.3d at 944.  This case exemplifies how the Government is well-situated to adduce that proof.  Peebo was a fictional character created by the Government's key witness, Agent Visnofske.  All the Government needed to do was have Visnosfke say that as Peebo, he did or did not represent himself to Fries as a

licensed importer, manufacturer, dealer, and collector of firearms. Shedding the alias, Visnofske also could have testified that he did or did not possess such a license. The same is true for Agent Williams.[6]

Thus, the Government was well-situated to adduce evidence tending to prove the transferee's status. For the defendant to have carried the burden, Fries may have had to adduce federal firearms license records to show that Visnofske and Williams were or were not licensed importers, manufacturers, dealers, and collectors of firearms. Fries may also have had to testify as to whether Visnofske and Williams had represented themselves to be or not to be licensed importers, manufacturers, dealers, and collectors of firearms.

### C.    The Governments failure to prove an essential element necessarily affected Fries' substantial rights and warrants correction because it seriously affected the fairness, integrity, or public reputation of these judicial proceedings

The total absence of evidence as to an essential element constitutes reversible plain error. United States v. Gari, 572 F.3d 1352, 1360-61 (11th Cir. 2009) (vacating one count as plain error due to insufficient evidence on essential element); United

---

[6] Appellant is unaware of any federal law that prohibits an ATF agent from obtaining a license as gun importer, manufacturer, dealer, or collector of firearms. See 18 U.S.C. § 923; 27 C.F.R. §§ 478.47, 478.141; Special Agent Information Packet, U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, http://www.atf.gov/publications/download/p/atf-p-2310-4.pdf (last visited online September 20, 2012). Accordingly, as a matter of law, Visnofske and Williams could have been federally licensed firearm importers, manufacturers, dealers, or collectors.

States v. Cano, 289 F.3d 1354, 1366-67 (11th Cir. 2002) (finding the "absence of any evidence to support the charge" to be error that is plain, affects the defendant's substantial rights, and affects the fairness, integrity, and public reputation of the proceeding).  A finding that plain error occurred here necessarily requires this Court to vacate the judgment and remand for entry of a judgment of acquittal.  United States v. Mount, 161 F.3d 675, 678 (11th Cir. 1998) ("If the record does not contain sufficient evidence under which a properly instructed jury could have convicted .... then double jeopardy principles mandate that we vacate the conviction and remand to the district court with directions to enter a judgment of acquittal on the count in question").

> II.   WHETHER THE DISTRICT COURT UNCONSTITUTIONALLY RELIEVED THE GOVERNMENT OF ITS BURDEN TO PROVE EVERY ELEMENT BEYOND A REASONABLE DOUBT BY INSTRUCTING THE JURY THAT THE SALE OF A FIREARM TO A LICENSED DEALER WAS AN IRRELEVANT EXCEPTION TO THE PROHIBITION ON SALES TO NON-RESIDENTS RATHER THAN AN ESSENTIAL ELEMENT OF 18 U.S.C. § 922(a)(5)

Just as it is plain that 18 U.S.C. § 922(a)(5) required the Government to prove the transferee's status with respect to possession of a license to import, manufacture, deal, and collect firearms, see supra Issue I, it is equally plain that the district court erred by not instructing the jury to find the element proved beyond a reasonable doubt.  The district court should have instructed the jury that it must find that, at the

34

time of the transfer, "neither the Defendant nor the person who received the firearm was a licensed firearms dealer, importer, manufacturer, or collector."  Eleventh Circuit Pattern Jury Instructions (Criminal Cases) No. 34.2 (2010).  It did not do that. Instead, it told jurors that "a Florida resident who does not have a federal license cannot legally sell or transfer a firearm to a person who does not reside in Florida. **There are exceptions -- for a transfer to a licensed dealer**, for a firearm that passing through inheritance, and for a firearm that is being loaned or rented for sporting purposes -- **but the exceptions are not involved in this case**."  R69P585-86; R38-3P8 (emphases supplied).  Thus, the district court effectively relieved the Government of its burden to prove an essential element in violation of Appellant's due process rights. U.S. Const. Amend. V.

   "Failure to instruct the jury regarding an element of the offense is plain error where, as here, the government introduces no evidence regarding the element in question." United States v. McArthur, 108 F.3d 1350, 1353 n.3 (11th Cir.1997).  The appropriate remedy would be to vacate the judgment and remand for a new trial with the proper instructions.

   However, this Court need not reach that issue because "[o]nly if the evidence is sufficient for a properly instructed jury to have convicted ... do we have to determine whether the district court's erroneous jury instruction constituted plain error requiring reversal and remand for a new trial." United States v. Mount,  161

F.3d 675, 678 (11th Cir. 1998).  <u>See also</u> <u>United States v. Thomas</u>,  916 F.2d 647, 653

(11th Cir. 1990) (declining to address whether an instruction was plain error "because

we find that the government failed to put forward sufficient evidence" of one of the

elements of the offense).  Here, as stated in Issue I, the evidence was insufficient, so

this argument should be considered only in the alternative.

<u>CONCLUSION</u>

For the reasons stated above, this Court should vacate the judgment for entry

of a judgment of acquittal, or, in the alternative, remand for a new trial.

            Respectfully submitted,
            Randolph P. Murrell
            Federal Public Defender

By:    *s/Chet Kaufman*
            Chet Kaufman
            Asst. Federal Public Defender
            Florida Bar No. 814253
            227 N. Bronough Street, Ste. 4200
            Tallahassee, Florida 32301
            Telephone: (850) 942-8818
            FAX: (850) 942-8809
            Attorney for Appellant
            chet_kaufman@fd.org

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and by U.S. Mail to Assistant United States Attorney Jason R. Coody, 111 N. Adams Street, 4th Floor, Tallahassee, FL 32301, and to Theodore Stewart Fries, 5465 N.E. First Lane, Ocala, FL 34470, on this 28th day of September, 2012.


  *s/Chet Kaufman*
CHET KAUFMAN
Assistant Federal Public Defender

38

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[**X**] this brief contains about 9,114 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using WordPerfect 9 in Times New Roman, 14 point, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

 *s/Chet Kaufman*
CHET KAUFMAN
Assistant Federal Public Defender
Attorney for Appellant
September 28, 2012

39